SHIRLEY A. WICKER, APPELLANT, v. DONALD
D. WICKER, RESPONDENT.

No. 5657

March 11, 1969                              451 P.2d 715

*Flangas & Stone,* of Las Vegas, for Appellant.

*Elwin C. Leavitt,* of Las Vegas, and *E. R. Miller, Jr.,* of Ely, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

In this case the district court assumed an authority to readjust the property and alimony provisions of a final divorce

judgment entered in Wisconsin. Since the court was powerless to alter the property distribution and abused its discretion with respect to the alimony award, we reverse those aspects of its order, and affirm only that part entering judgment for accrued but unpaid alimony.

Shirley Wicker filed suit against her former husband seeking enforcement of a 1962 Wisconsin divorce judgment, arrearages in alimony, an order directing him to bring current the premium payments due on life insurance policies, and requesting an increase in alimony. The Wisconsin decree awarded her alimony of $300 a month and, "as a full and complete division of the property and estate of the parties," directed the husband to make her the irrevocable beneficiary of three life insurance policies and to pay the premiums thereon. The former husband responded by requesting a decrease of the monthly alimony award.

The district court granted Shirley Wicker judgment for alimony arrearages as it was bound to do. Biel v. Godwin, 69 Nev. 189, 245 P.2d 997 (1952). However, it further ordered that the former husband need only maintain one of the three insurance policies to insure payment of alimony arrearages and 18 months of future alimony; that he need not reinstate and maintain the other two policies, and that the duty to maintain the one was to cease when all sums ordered by the Nevada court were paid in full. Finally, as to alimony, the court ordered the former husband to continue to pay $300 a month for a period of six months, and $150 a month for the next 12 months—at which point the obligation to pay further alimony was to cease altogether. For reasons hereafter expressed, the provisions of its order relating to property and future alimony are clearly erroneous.

1.  The validity of the Wisconsin judgment is not challenged in any respect, and is entitled to full faith and credit. U.S. Const. art. IV, § 1; 28 U.S.C. 1738. We must, therefore, defer to the law of Wisconsin to determine the effect of its judgment regarding property and alimony. Kraemer v. Kraemer, 79 Nev. 287, 382 P.2d 394 (1963); Summers v. Summers, 69 Nev. 83, 241 P.2d 1097 (1952).

The Wisconsin judgment with regard to the insurance policies was stated by that court to be an adjudication of property.

Under Wisconsin law the division of an estate in a divorce decree is "fixed for all time" [Trowbridge v. Trowbridge, 114 N.W.2d 129, 132 (Wis. 1962)], and is not subject to modification or revision after the time for appeal has passed. Sholund v. Sholund, 148 N.W.2d 726 (Wis. 1967); Trowbridge v. Trowbridge, supra; Anderson v. Anderson, 98 N.W.2d 434 (Wis. 1959). Nevada is bound to accord full faith and credit to that property division, and is powerless to alter it. The doctrine of res judicata also forbids relitigation of that issue in this state. Kraemer v. Kraemer, supra.

2. With respect to alimony, it is the law of Wisconsin that such an award is subject to modification in that State at any time subsequent to the decree. Wis. Stat. § 247.32; Trowbridge v. Trowbridge, supra. Since the judgment for alimony is inconclusive and re-examinable in Wisconsin, it need receive no greater credit in Nevada, and may be re-examined here. Zentzis v. Zentzis, 158 N.W. 284, 286 (Wis. 1916). However, to justify modification a substantial or material change in circumstances must be established. Miner v. Miner, 103 N.W.2d 4 (Wis. 1960). This evaluation and the consequences to follow calls for an exercise of judicial discretion. We do not hesitate to find an abuse of such discretion here and proceed to relate the relevant facts to show that such is the case.

Both sought modification—the former wife asking for more alimony and the former husband seeking to decrease that obligation. At the time of the divorce in 1962 the husband, a doctor, was earning $12,000 a year. In 1967 when this action was commenced his income was approximately twice that amount, and this was a substantial decrease from the prior year because of the copper strike in Ely. He owns a home in Ely subject to an encumbrance, a house in McGill, a cabin at Cherry Creek, a 1967 Buick and a 1962 Landrover, and stock valued at about $400. He has remarried and is the sole support of his second wife and three children. In sum, his ability to earn money has dramatically improved since 1962. He has voluntarily incurred new obligations.

The former wife's circumstances have worsened. At the time of the divorce she had been making $300 per month, but continuing and increasing physical and emotional illness forced a steady reduction in work time as the years went on. In each of the years 1965 and 1966 she earned little over $1,000 per year, in 1967, $800, and for the first three months of 1968, only $80. She was able to pay living expenses only by receiving

loans from relatives. She testified to having severe headaches and constant pain in the neck, back, hips, and right shoulder and knee, trouble in focusing eyes, pain and swelling in the sinuses, and frequent earaches, all of which make sustained employment practically impossible, although she has attempted to find work. She admitted that these afflictions became aggravated following an automobile accident in 1963, but that some of the symptoms were present at the time of the divorce, and that her health at that time was generally not good. She is making monthly payments of $110 on the purchase of a two-bedroom house. She has outstanding debts in the sum of $3,147.21, and monthly expenses in the sum of $674.73. These expenses were itemized for the court, and they are not unreasonable.

A comparison of their respective circumstances shows, on the one hand, a practising physician with assured employment and a capacity to earn a substantial income; and, on the other, a deteriorating physical specimen with little or no employment. There is no real indication in the record that the doctor is unable to support his present family and also provide for his former wife as ordered by the Wisconsin court. His remarriage, by itself, is not a ground for modification in his favor. Ashburn v. Ashburn, 45 N.W.2d 298 (Mich. 1951). In these circumstances the court abused its discretion in reducing alimony and providing for its future termination since all of the evidence denies that result.

It does not automatically follow, however, that the former wife is entitled to increased alimony. For the time being, the alimony provision of the Wisconsin judgment shall stand without change.

COLLINS, C. J., ZENOFF, BATJER, and MOWBRAY, JJ., concur.