**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 10 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CRAE F. HANCOCK,

      Plaintiff-Appellant,

v.

STATE OF UTAH; OFFICE OF
RECOVERY SERVICES FOR THE
STATE OF UTAH; SARAH WILLIS;
STATE OF MONTANA; OFFICE OF
RECOVERY SERVICES FOR THE
STATE OF MONTANA; BRENDA K.
CLARK,

      Defendants-Appellees.

No. 98-4139
(D.C. No. 97-CV-787)
(D. Utah)

---

**ORDER AND JUDGMENT** [*]

---

Before **BRORBY** , **EBEL** , and **BRISCOE** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this appeal.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Plaintiff Crae F. Hancock, acting pro se, appeals the district court's dismissal of his civil rights lawsuit against the States of Utah and Montana, two state agencies involved in child support recovery services, and three state employees.  The district court dismissed the action.   We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## BACKGROUND

The gist of Mr. Hancock's district court complaint was that defendants had infringed upon his constitutional rights by failing to afford a Nevada state court judgment full faith and credit,     U.S. Const. art. IV, § 1; disregarding the Privileges and Immunities Clause,    id. art. IV, § 2; and violating the Double Jeopardy Clause, id.  amend. V, XIV.  For these alleged constitutional violations, Mr. Hancock asserted that he was entitled to relief under 42 U.S.C. §§ 1983, 1985(2), and 1986.  Additionally, Mr. Hancock asserted that defendants violated his right to due process by placing yellow fringe around the American flag, failed to follow the Federal Rules of Civil Procedure when they fully capitalized his name in the captions of court filings, and defamed him through their collection efforts.

Mr. Hancock's grievances arose out of the defendants' efforts to collect a child support arrearage as calculated under the child support obligation set out in

-2-

the 1979 Utah divorce decree dissolving his marriage with Ranae Margo Keller Hancock (now Ranae Lindsay). After the divorce, Mr. Hancock made only sporadic payments. Utah provided the children with government benefits in the form of Aid to Families with Dependent Children or Medicaid.

At some later point, Ms. Lindsay changed her residence to Montana and Mr. Hancock changed his to Nevada. On Ms. Lindsay's behalf, individuals in the Montana Department of Public Health and Human Services, Child Support Enforcement Division (Montana defendants), brought a child support collection action in Nevada under that state's version of the Revised Uniform Reciprocal Enforcement of Support Act (RURESA).[1]

_____

[1] In Taylor v. Vilcheck, 745 P.2d 702 (Nev. 1987), the Nevada Supreme Court provided an overview of RURESA statutory and case law:

> The purpose of [RURESA] is to improve and extend by reciprocal legislation in separate jurisdictions the enforcement of existing duties of family support. See NRS 130.030; State ex rel. Welfare Div. v. Vine, 99 Nev. 278, 283, 662 P.2d 295, 298 (1983). Generally speaking, RURESA itself "creates no duties of family support, but is concerned solely with the enforcement of the already existing duties when the person to whom a duty is owed is in one state and the person owing the duty is in another." See Annotation, Construction and Effect of Provision of Uniform Reciprocal Enforcement of Support Act That No Support Order Shall Supercede or Nullify Any Other Order, 31 ALR 4th 347, 351 (1984) citing Uniform Reciprocal Enforcement of Support Act, Commissioner's Prefatory Note, 9B U.L.A. 382 (1968); see also NRS 130.280; Vix v. State of Wisconsin, 100 Nev. 495, 686 P.2d 226 (1984) (in RURESA proceedings, a court only has jurisdiction to order enforcement of

(continued...)

Although the Montana defendants calculated that Mr. Hancock owed $12,030.75 in unpaid child support, the arrearage was listed as $1,230.75, due to an error in court filings. Mr. Hancock paid this lesser amount. Accordingly, the Nevada court concluded that he had satisfied the arrearage and, on December 9, 1994, dismissed the RURESA action with prejudice. In May of 1996, the district court denied as untimely a motion to set aside the judgment on the ground that the dismissal was entered in error.

---

[1](...continued)
pre-existing duties of support). Moreover, the remedies provided by the act are "in addition to and not in substitution for any other remedies." See NRS 130.050. The act further provides that it "shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it." See NRS 130.020.

. . .

NRS 130.280(1) [] directs that:

A support order made by a court of this state pursuant to this chapter does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar law or any other law, regardless of priority of issuance. . . .

Taylor, 745 P.2d at 703-04.

We note that the Uniform Interstate Family Support Act, see Nev. Rev. Stat. 130.0902 to 130.802, replaced RURESA in Nevada, effective January 1, 1998. See Nev. Rev. Stat. 130.0902 to 130.802 (1997).

In the meantime, Mr. Hancock returned to Utah. Individuals in the Office of Recovery Services, State of Utah (Utah defendants), commenced an administrative action to recover monies owed to the state for the arrearage which had accrued while Mr. Hancock's children received government benefits. The Montana defendants assisted the Utah defendants by providing information concerning amounts owed directly to Ms. Lindsay. The Utah Office of Recovery Services entered an order setting the arrearage amount at $4,581.54. Although Mr. Hancock wrote, called, and visited the Utah defendants to protest the action, he did not follow state law procedures for seeking judicial review of the administrative order. See Utah Code Ann. §§ 63-46b-14 to -22 (1997 & Supp. 1997). As a consequence, the order became an enforceable state district court judgment against Mr. Hancock on July 25, 1997. See Utah Code Ann. § 62A-11-312.5 (1997).

Mr. Hancock then brought this action in federal district court. The district court was meticulous in sorting through Mr. Hancock's claims, giving them the liberal construction afforded to pro se pleadings, see Green v. Branson, 108 F.3d 1296, 1303 (10th Cir. 1997), and holding three hearings to provide Mr. Hancock the opportunity to argue his case. In a Memorandum Opinion and Order dated April 15, 1998, the court disposed of several issues.

-5-

First, it denied Mr. Hancock's motion to strike the Montana defendants' pleadings based on the full capitalization of his name. <u>See</u> R., Vol. I, doc 34 at 2-13. It also rejected Mr. Hancock's argument that these defendants denied him his constitutional right to due process by pursuing collection of child support in state courts displaying American flags having a yellow fringe, <u>see id.</u> at 16-19, and through the administrative mechanism fashioned by the Utah Legislature to collect child support, <u>see id.</u> at 19-24. Finally, it dismissed claims for damages against the State of Montana and the Montana defendants sued in their official capacities, based on the bar of the Eleventh Amendment. <u>See id.</u> at 14-15.

The court further ordered, however, that Mr. Hancock was granted leave to file an amended complaint to plead facts showing that an individual Montana defendant had exacted payment for past-due child support that he did not owe. <u>See id</u>. at 26-27. A separate Order of Dismissal, also filed April 15, 1998, applied the same rulings to the motion to dismiss filed by the Utah defendants. <u>See id.</u>, tab 32 at 2-4.

After Mr. Hancock submitted additional filings, the district court held a hearing to deal with the remaining claims. At the hearing, Mr. Hancock did not contest the child support arrearage calculation incorporated into the Utah judgment. Instead, he attempted to focus the court's attention on the Nevada dismissal, which he characterized as his "ticket to freedom" that he "fought hard

-6-

to get." R., Vol. IV at 23. His primary argument was that the Nevada judgment operated to bar any attempt by Utah or Montana state authorities to collect any additional unpaid child support under the Utah decree.

In an Order dated July 31, 1998, the district court rejected all of Mr. Hancock's arguments. The court determined that (1) the Nevada RURESA dismissal did not modify the underlying Utah divorce decree, and therefore considerations of full faith and credit did not bar the Utah litigation, see R. Vol. I, doc 52 at 4-6; (2) Mr. Hancock was not denied access to judicial review in the Utah collection proceeding, so that his due process rights were not violated, see id. at 7-8, 9; (3) the civil child support collection proceedings did not implicate the Double Jeopardy Clause, see id. at 8; (4) the individual Montana and Utah defendants were entitled to qualified immunity from personal liability because Mr. Hancock had not pled a violation of any clearly established constitutional right, see id. at 8-9; and (5) the remainder of the claims must also be dismissed for failing to state a valid claim, or alternatively, for failing to raise a genuine issue of material fact, see id. at 9. Accordingly, the court granted the Montana defendants' motion to dismiss and the Utah defendants' motion to dismiss, which it treated as a motion for summary judgment under Fed. R. Civ. P. 56. See id. at 10.

## DISCUSSION

On appeal, we review the trial court's rulings de novo.    See Kidd v. Taos Ski Valley, Inc. , 88 F.3d 848, 851, 854 (10th Cir. 1996).  We uphold a dismissal under Fed. R. Civ. P. 12(b)(6) only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true.    See Dill v. City of Edmond , 155 F.3d 1193, 1201 (10th Cir. 1998).  "Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."    Kidd, 88 F.3d at 851.

Concerning the merits of his appeal, Mr. Hancock essentially repeats the arguments he made in the district court.  After carefully reviewing the record on appeal, we are in substantial agreement with the district court's resolution of these arguments in its orders of April 15 and July 31, 1998.  Moreover, we find no merit in Mr. Hancock's contention that the district court demonstrated bias toward him, warranting recusal and disciplinary action.    See Hinman v. Rogers , 831 F.2d 937, 939 (10th Cir. 1987) (generalized and conclusory allegations of bias are insufficient to form basis for disqualification).

We AFFIRM the judgment of the district court.  The mandate shall issue

forthwith.


Entered for the Court


David M. Ebel
Circuit Judge